ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2016 JUN -3 PM 3:04

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | | |
|---|---|---|
| DEERE & COMPANY, | * | |
| Plaintiff, | * | |
| v. | * | CV 315-072 |
| REBEL AUCTION COMPANY, INC., and FOUR-D, INC., | * | |
| Defendants. | * | |

# O R D E R

Presently before the Court in the captioned case is Plaintiff's motion for partial summary judgment. For the reasons that follow, Plaintiff's motion is **GRANTED**.

## I. BACKGROUND

The following facts are not in dispute. On May 30, 2012, a non-party to this litigation and resident of Virginia, Mr. Benny F. Hall, Jr., executed a Loan Contract-Security Agreement in favor of Plaintiff Deere & Company and granted a security interest in certain items of agricultural equipment to include: (1) JD 616C Combine (Corn Head), Serial Number 745283 (hereinafter referred to as the "Combine"); and (2) Horst Welding CF 45 Transport, Serial Number 120307 (hereinafter referred to as the "Transport"). (McMains Aff.

of Apr. 13, 2016, Ex. A.)  Plaintiff perfected its security interest by recording a UCC financing statement in Virginia. (Id., Ex. B.)

On January 6, 2014, Mr. Hall consigned the Combine and Transport to Defendant Rebel Auction Company, Inc. ("Rebel Auction") for auction. (Pl.'s Mot. for Partial Summ. J., Ex. 6c (Bates 168); Dep. of George Larry Davis, at 6-7 & Ex.1.) Nevertheless, a few weeks later, Defendant Four-D, Inc. ("Four-D") purchased the equipment directly from Mr. Hall for $49,500. (Pl.'s Mot. for Partial Summ. J., Ex. 6c (Bates 169); Davis Dep. at 22.)  Mr. George Larry Davis is the President of Rebel Auction. He is also the Vice-President and a 50% shareholder of Four-D. (Davis Dep. at 5, 24.)

On March 15, 2014, Defendant Rebel Auction auctioned the equipment, selling it to Randall Brothers of Holgate, Ohio, along with other items of equipment. The Combine and Transport sold as one unit to the Randall Brothers for $60,000. (Pl.'s Mot. for Partial Summ. J., Ex. 6c (Bates 94); Davis Dep. at 25-26.)

Plaintiff had no notice of either the sale of the equipment to Four-D or the sale to Randall Brothers. (McMains Aff. of Apr. 13, 2016, ¶ 8.) Moreover, it is undisputed that neither Rebel Auction or Four-D performed a UCC search prior to the referenced sales. In fact, Mr. Davis testified that

2

Rebel Auction does not typically perform UCC searches. (Davis Dep. at 28.)

On October 2, 2014, a check for a payment in the amount of $350,834.12 was posted on Mr. Hall's account with Plaintiff. (McMains Aff. of Apr. 13, 2016, Ex. D.) However, the payment was reversed on October 9, 2014, leaving a balance owed on the account in the amount of $345,616.73 as of October 20, 2014. (Id.)

On October 17, 2014, having been made aware of the sale of the equipment, Plaintiff notified Randall Brothers of its security interest. (Pl.'s Mot. for Partial Summ. J., Ex. 6c (Bates 101).) Subsequently, by check dated October 24, 2014, Defendant Rebel Auction refunded the purchase price on the equipment to Randall Brothers. (Id. (Bates 95).)

Plaintiff initially pursued recovery of the equipment. In fact, on February 17, 2015, it brought a writ of possession action against Rebel Auction for return of its collateral in the Superior Court of Georgia. (Pl.'s Mot. for Partial Summ. J., Ex. 6c (Bates 2-4).) During the course of that state court proceeding, the depositions of Mr. Davis and of his administrative assistant at Rebel Auction, Mr. Stan White, were taken. (Pl.'s Mot. for Partial Summ. J., Exs. 7 & 8.) Both men testified that Defendants did not reacquire the equipment from the Randall Brothers. (Davis Dep. at 27; Dep.

of Stan White, at 26-27.) The disposition of this state action, if any, is unknown to this Court.

On August 31, 2015, Plaintiff brought the instant case against Defendants seeking recovery of damages on its sole claim-a tort claim for conversion. On April 27, 2016, Plaintiff moved for partial summary judgment, asking that judgment as a matter of law be entered against Defendants on its conversion claim.[1]

Of note, after filing the instant lawsuit, Plaintiff sold all of the collateral securing Mr. Hall's three loan accounts with Plaintiff *except* the Combine and the Transport. Plaintiff then obtained a Consent Judgment against Mr. Hall for the balance of his loan account in the amount of $59,359.78 from a Circuit Court in Virginia. (McMains Aff. of Apr. 13, 2016, ¶ 4 & Ex. C.)

## II. STANDARD OF REVIEW

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of the summary judgment rule is to

---

[1] Plaintiff also contends that the Court may enter judgment in its favor on the issue of damages. Because the issue of damages is a fact-intensive matter, the Court will schedule an evidentiary hearing on the issue of damages.

4

dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the nonmoving party. Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless the factual dispute is *material* to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoted source omitted) (emphasis supplied). The party opposing the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue to be tried." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990).

In this case, the Clerk gave Defendants appropriate notice of the motion for partial summary judgment and informed them of the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 25.) Therefore, the

5

notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. LEGAL ANALYSIS

The issue of liability on Plaintiff's conversion claim is straightforward and virtually conceded by Defendants. Under Georgia law, conversion is "an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." <u>Maryland Cas. Ins. Co. v. Welchel</u>, 356 S.E.2d 877, 880 (Ga. 1987) (quoted source omitted). "Any distinct act of dominion wrongfully asserted over one's property in denial of his right, or inconsistent with it, is a conversion." <u>Id.</u> (quoted source omitted).

Under similar circumstances involving a conversion claim against an auction company, the Georgia Court of Appeals held that an auctioneer, as an agent of the property seller, is "liable to a secured creditor for conversion when the auctioneer, without the secured creditor's knowledge or consent, sells goods in which the secured creditor holds a

6

perfected security interest." <u>Deere & Co. v. Miller-Godley Auction Co.</u>, 549 S.E.2d 762, 763 (Ga. Ct. App. 2001). Indeed, the Georgia Court of Appeals reached this conclusion even though the auctioneer had not conducted a UCC search. The auctioneer had argued, and the trial had held, that it was against public policy to require auctioneers to verify the title of the goods they sell. <u>Id.</u> at 765. In reversing the trial court, the Georgia Court of Appeals determined that allowing auctioneers to ignore financing statements would undermine the purpose of the Uniform Commercial Code to provide a dependable system to protect secured transactions. <u>Id.</u> at 765-66. The court further noted that auctioneers who do not have the foresight to protect themselves can seek indemnity from the principals who offer their goods for sale. <u>Id.</u> at 766.

In the case at bar, Defendants are in the same position as the auctioneer in the <u>Miller-Godbey</u> case. Defendants, as agents of Mr. Hall, sold the equipment in derogation of Plaintiff's security interest. It is immaterial that Defendants did not conduct a UCC search and therefore had no notice of Plaintiff's security interest.

In response to Plaintiff's motion for partial summary judgment on the issue of liability, Defendants do not dispute the facts or disagree with the application of <u>Miller-Godbey</u>.

Rather, Defendants point out Mr. Hall's culpability in the situation. (Defs.' Opp'n to Mot. for Partial Summ. J., at 3 ("Defendants show little concern for the idea that the seller, Benny F. Hall, Jr., essentially committed a criminal act by fraudulently conveying the items without reference to any security interest being included thereon . . . .").)[2] The Miller-Godbey court, however, accounted for the role of the fraudulent seller when it stated that the auctioneer could seek indemnity from its principal. Simply put, the culpability of the seller does not diminish the obligation of auctioneers to perform UCC searches to protect themselves from liability for conversion.

Defendants also assert that the relevant account Mr. Hall had with Plaintiff may have been satisfied at the time of the conversion. Defendants also add that there exists an escrow account arising out of litigation in Virginia that could satisfy Plaintiff's financial interest without resorting to this tort claim. These arguments, however, sound in mitigation of damages. They do not affect or alter Defendant's liability on the conversion claim.

---

[2] There is also some dispute about whether the serial number tag on the Combine was switched at some point. However, there is no genuine dispute that the equipment sold at auction to the Randall Brothers is the equipment in which Plaintiff held a valid security interest.

8

## IV. CONCLUSION

Upon the foregoing, Plaintiff's motion for partial summary judgment on the issue of liability on its tort claim for conversion (doc. no. 24) is **GRANTED**. The Court will conduct an evidentiary hearing on the issue of damages (including Defendants' claims of mitigation and Plaintiff's claims for attorney's fees and punitive damages) at a hearing at the J. Roy Rowland United States Courthouse, at Dublin, Georgia, at 11:00 a.m., on Wednesday, July 20, 2016.

**ORDER ENTERED** at Augusta, Georgia, this \_\_3rd\_\_ day of June, 2016.

_____
UNITED STATES DISTRICT JUDGE